UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11608-GAO

DAVID COX,

      Plaintiff,

v.

RYAN MARINI, SEAN BORDWELL,
AND JOHN DOE,

      Defendants.

**DEFENDANT RYAN MARINI'S SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS OPPOSITION TO PLAINTIFF'S MOTION TO
COMPEL DEFENDANT RYAN MARINI TO REVEAL JOHN DOE'S IDENTITY**

Pursuant to the Court's Order dated February 13, 2007, the Defendant Ryan Marini hereby submits this Supplemental Memorandum of Law in Further Support of his Opposition to Plaintiff's Motion to Compel Ryan Marini to Reveal John Doe's Identity.

## I. ARGUMENT

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT RYAN MARINI TO
REVEAL THE IDENTITY OF JOHN DOE MUST BE DENIED BECAUSE
COMPELLED DISCLOSURE OF JOHN DOE'S IDENTITY WOULD
TEND TO INCRIMINATE DEFENDANT RYAN MARINI IN VIOLATION
OF HIS FIFTH AMENDMENT PRIVILEGE**

On February 13, 2007, during a Status Conference on this matter, the Court heard oral argument on the Plaintiff's Motion to Compel the Defendant Ryan Marini to Reveal the Identity of John Doe. For the supplemental reasons set forth below, the Plaintiff's Motion to Compel Defendant Ryan Marini to Reveal the Identity of John Doe must be denied because the compelled disclosure of John Doe's identity would tend to incriminate the Defendant Ryan Marini in violation of his Fifth Amendment privilege.

"The Fifth Amendment declares in part that 'No person . . . shall be compelled in any Criminal Case to be a witness against himself.'" Hoffman v. U. S., 341 U.S. 479, 485-486, 71 S.Ct. 814, 818 (1951). "This guarantee against testimonial compulsion, like other provisions of the Bill of Rights, 'was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed.'" Hoffman, 341 U.S. at 486, 71 S.Ct. at 818, citing, Feldman v. United States, 1944, 322 U.S. 487, 489, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408 (1944). "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." Hoffman, 341 U.S. at 486, 71 S.Ct. at 818, citing, Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110 (1892); Arndstein v. McCarthy, 254 U.S. 71, 72-73, 41 S.Ct. 26, 65 L.Ed. 138 (1920).

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman, 341 U.S. at 486, 71 S.Ct. at 818, citing, Blau v. United States, 340 U.S. 159, 71 S.Ct. 223 (1950). "If the witness, upon interposing his claim, were required to prove the hazard . . . he would be compelled to surrender the very protection which the privilege is designed to guarantee." Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495 (1964), quoting, Hoffman, 341 U.S. at 486-87, 71 S.Ct. at 818. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

2

Hoffman, 341 U.S. at 486-487, 71 S.Ct. at 818. The Court must uphold the witness's assertion of the privilege against self-incrimination unless it is "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers cannot possibly have such tendency to incriminate." Malloy, 378 U.S. at 12, 84 S.Ct. at 1496, citing, Hoffman, 341 U.S., at 488, 71 S.Ct., at 819.

Pursuant to the principles established by Hoffman and its progeny, the Plaintiff's Motion to Compel Defendant Ryan Marini to Reveal the Identity of John Doe must undoubtedly be denied because the compelled disclosure of John Doe's identity could potentially "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman, 341 U.S. at 486, 71 S.Ct. at 818. For example, under circumstances materially indistinguishable from the present case, the United States Supreme Court in Malloy reversed the petitioner's conviction for criminal contempt and the denial of the petitioner's subsequent application for a writ of habeus corpus, holding that the petitioner had properly invoked his privilege against self-incrimination in refusing to answer the following questions:

> (1) for whom did he work on September 11, 1959; (2) who selected and paid his counsel in connection with his arrest on that date and subsequent conviction; (3) who selected and paid his bondsman; (4) who paid his fine; (5) what was the name of the tenant of the apartment in which he was arrested; and (6) did he know John Bergoti.

378 U.S. at 12, 84 S.Ct. at 1496. Prior to invoking his privilege against self-incrimination, the petitioner was arrested during a gambling raid and pleaded guilty to the crime of pool selling. 378 U.S. at 3, 84 S.Ct. at 1491.

In reversing the petitioner's contempt conviction for refusing to answer the foregoing questions, the Court noted that "the State desired to elicit from the petitioner

3

the identity of the person who ran the pool-selling operation in connection with which [the petitioner] had been arrested in 1959." 378 U.S. at 13, 84 S.Ct. at 1496. In light of these circumstances, the Court concluded that the "petitioner might apprehend that if this person were still engaged in unlawful activity, disclosure of his name might furnish a link in a chain of evidence sufficient to connect the petitioner with a more recent crime for which he might still be prosecuted." Id. citing, Greenberg v. United States, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332, reversing per curiam, 192 F.2d 201 (3rd Cir. 1951); Singleton v. United States, 343 U.S. 944, 72 S.Ct. 1041, 96 L.Ed. 1349, reversing per curiam, 193 F.2d 464 (3rd cir. 1952); United States v. Coffey, 198 F.2d 438, 440-41 (3rd Cir.) ("in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry"). Accordingly, the Court held that "as to each of the questions, it was evident from the implications of the question, in the setting in which it (was) asked, that a responsive answer to the question or an explanation of why it (could not) be answered might be dangerous because injurious disclosure could result. . . ." 378 U.S. at 14, 84 S.Ct. at 1497, citing, Hoffman, 341 U.S., at 486-487, 71 S.Ct. 818; Singleton, 343 U.S. 944, 72 S.Ct. 1041.

Similarly, the Supreme Court in Greenberg reversed the conviction of a grand jury witness held in contempt for refusing to identify the business in which he used a particular telephone or to identify "numbers runners" known to frequent a particular locale. 343 U.S. 918, 72 S.Ct. 674. On appeal, the Third Circuit Court of Appeals had found no basis in the record for inferring that revelation of Greenberg's business or his

4

acquaintance with numbers runners might have helped expose him to federal prosecution and, therefore, held that the district court properly punished him for refusing to answer. 187 F.2d 35. However, the Supreme Court granted certiorari and remanded the case back to the Third Circuit Court of Appeals for reconsideration in the light of its disposition of the Hoffman case. Greenberg v. United States, 341 U.S. 944, 71 S.Ct. 1013, 95 L.Ed. 1369 (1951).

As the Third Circuit Court of Appeals subsequently explained in U.S. v. Coffey, 198 F.2d 438 (3rd Cir. 1952), upon such reconsideration the Court "still thought the Hoffman and Greenberg cases could and should be distinguished." 198 F.2d 438, 439. In that regard, the Third Circuit Court of Appeals reasoned that whereas the Supreme Court in Hoffman "seemed to think the answer of the witness might in itself suggest wrongdoing", by contrast in Greenberg "there was nothing else of evidentiary nature in the record to suggest how the identification of Greenberg's business or the naming of certain numbers runners might involve the witness in federal crime." 198 F.2d at 439. Although counsel argued that "the witness might fear that his answer might suggest subsequent questions or investigations which in turn might reveal that he was a proprietor who employed other persons in the numbers business, that the numbers runners in question were among his employees, that he was required by the laws of the United States to withhold part of their wages and to make certain returns for income and social security tax purposes and that he had willfully failed to do so, thus subjecting himself to federal criminal prosecution . . . ," the Third Circuit Court of Appeals nevertheless concluded that "there were too many facts missing, without evidence to suggest their existence, between the matter of the use made of Greenberg's telephone or his possible

5

acquaintance with certain numbers runners and any violation of the income tax or social security laws for the claim of privilege to be sustained." Coffey, 198 F.2d 438, 439. The Supreme Court granted certiorari and summarily reversed the judgment of the Third Circuit Court of Appeals without opinion, entering only this order: "Judgment reversed. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118." Greenberg v. United States, 1952, 343 U.S. 918, 72 S.Ct. 674 (1952).

By the same token, in Singleton, the Supreme Court, citing Hoffman and Greenberg, summarily reversed the defendant's conviction of contempt for refusing to answer the question "What business is he in?" with respect to three named individuals. 343 U.S. 944, 72 S.Ct. 1041. See also, United States v. Weisman, 111 F.2d 260, 261 (2nd Cir. 1940), (upholding the privilege in response to question whether witness knew anyone who visited, lived in, or stayed at, Shanghai in the years 1934 to 1939); United States v. Zwillman, 108 F.2d 802 (3rd Cir. 1939) (upholding privilege in response to question who the witness' business associates were in the years 1928 to 1932); Kasinowitz v. United States, 181 F.2d 632 (9th Cir. 1950) (upholding privilege in response to questions of whether the witness knew Dorothy Healy and whether the witness knew Dorothy Healy's occupation); Maffie v. United States, 209 F.2d 225, 231 (1st Cir. 1954) (upholding privilege in response to question, among others, whether witness knew 'Specs' O'Keefe and Stanley Gusciora); Estes v. Potter, 183 F.2d 865 (5th Cir. 1950) (upholding privilege in response to question whether the witness personally knew a certain alien); Marcello v. United States, 196 F.2d 437, 442 (5th Cir. 1952) (upholding privilege in response to question "Do you know Salvatore Vittali?"); Aiuppa v. United States, 201 F.2d 287 (6th Cir. 1952) (upholding privilege in response to questions whether the witness knew R. L.

6

O'Donnell and Anthony Accardo); In re Neff, 206 F.2d 149 (3rd Cir. 1953) (upholding privilege in response to questions whether the witness knew Julius Zinman and Lou Malinow).

Similar to Hoffman, Greenberg, and Singleton, there can be no doubt in the present case that the disclosure of the identity of an individual with whom Defendant Marini is alleged to have participated in an attack on Plaintiff, and with whom Defendant Marini is alleged to have conspired to deprive the Plaintiff of his constitutional rights, would tend to incriminate Defendant Marini, and could forge "links in a chain of facts" that might very well expose Defendant Marini to prosecution on additional charges arising out of the incident that is the subject of this action, and possibly others. Moreover, whether the State or Federal government could prosecute Defendant Ryan Marini without the identity of John Doe is entirely irrelevant to the question whether the privilege against self-incrimination applies. Even if Defendant Marini could be prosecuted for allegedly conspiring with "John Doe", Defendant Marini still cannot be compelled to give any information that might tend to incriminate him. Hoffman and its progeny make absolutely clear that the identity and whereabouts of persons with whom a witness is alleged, admitted and/or proven to have committed a crime or crimes, constitutes information that would tend to incriminate the witness. Indeed, under such circumstances, it is readily evident "from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous

7

because injurious disclosure could result." Hoffman, 341 U.S. at 486-487, 71 S.Ct. at 818.

## II. CONCLUSION

WHEREFORE, based upon the foregoing supplemental points and authorities the Defendant Ryan Marini respectfully requests that this Honorable Court deny the Plaintiff's Motion to Compel Defendant Ryan Marini to Reveal the Identity of John Doe.

DEFENDANT RYAN MARINI

Respectfully submitted,

*/s/ Matthew P. Zayotti*
Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: February 23, 2007

---

**CERTIFICATE OF SERVICE**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on 2/23/07.

*/s/ Matthew P. Zayotti*

---