UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11608-GAO

DAVID COX,
    Plaintiff,

v.

RYAN MARINI, SEAN BORDWELL, and
JOHN DOE,
    Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RYAN MARINI TO REVEAL JOHN DOE'S IDENTITY**

    In accordance with Fed.R.Civ.P. Rules 26 and 37, plaintiff David Cox ("Cox") hereby submits this memorandum in support of its motion for an order compelling Defendant Ryan Marini ("Defendant") to reveal the identity of John Doe, a named defendant in this matter. This Court has found on numerous occasions, that this information is critical to Cox's case arising out of a brutal beating sustained at the hands of the defendants and ordered Marini to produce the name and address of John Doe. In response to Cox's motion Marini has raised for the first time an argument that providing such information would incriminate him and subject him to potential prosecution for the lesser offenses of conspiracy to commit battery. The Court should again reject Marini's arguments as another attempt to protect the identity of his friend and co-assailant thus allowing John Doe to evade responsibility for his actions.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff brought this action seeking to recover damages arising from the physical and mental injuries he received when he was brutally attacked and beaten by the Defendants Ryan Marini, Sean Bordwell, and an unidentified John Doe, in a racially motivated attack. Additionally, Plaintiff claims that Defendants falsely imprisoned him, and conspired to deprive

him of his constitutional rights and privileges by restricting his liberty and right to move and travel freely. In 2004, Marini was tried and convicted of Assault and Battery With a Deadly Weapon (Shod foot), Assault and Battery and of Violating Cox's Civil Rights.

From the outset of the case, Cox has sought to learn the identity of the third attacker-- John Doe. On May 26, 2006, Marini submitted his Initial Disclosure Statement wherein he noted that he would reveal the identity of John Doe depending on the disposition of his Motion for Protective Order. The Court denied Defendant's motion on July 20, 2006. In the face of this ruling, Defendant refused to reveal John Doe's identity.

Over a month after the Court's order, and only in response to inquiries by Cox's counsel, Defendant filed a Motion for Reconsideration. The Court denied Defendant's Motion for Reconsideration on November 2, 2006. At no time during the pendancy of these motions or in any of the correspondences between the parties did Marini assert his newly claimed privilege against self incrimination. Indeed, until recently Marini stated that he still knows John Doe, his whereabouts but refused to reveal Doe's identity claiming that he is fearful on account of Doe's threats.

## ARGUMENT

I.  **Marini Cannot Raise The 5th Amendment Privilege On John Doe's Behalf.**

Marini's attempt to invoke the 5th Amendment privilege against self-incrimination in this case, and at this stage, is nothing but a desperate act to protect his friend and cohort in the brutal beating of David Cox. As the Court is well aware "the immunity provided by the 5th Amendment against self-incrimination is *personal* to the witness himself, and that he cannot set up the privilege of another person or of a corporation as an excuse for a refusal to answer; in other words, the privilege is that of the witness himself, and not that of the party on trial."

McAlister v. Henkel, 201 U.S. 90, 91 (1906) (emphasis added); Rogers v. U.S., 340 U.S. 367, 371 (1951) (the privilege against self-incrimination "is solely for the benefit of the witness, and is purely a personal privilege of the witness.").

As explained below because Marini was already convicted, it is evident that Marini is invoking the 5th Amendment privilege to protect his friend and not a legitimate request for protection from *self-incrimination*. Accordingly, the Court must deny Marini's request as a thinly veiled attempt to assert the privilege on John Doe's behalf.

## II.  Marini Cannot Meet His Burden And Show A Likelihood Of Criminal Prosecution.

The protective shield of the 5th Amendment does not extend itself to mere fantasy – "the prospective witness must show at the very least that he is faced with some authentic danger of incrimination." U.S. v. Castro, 129 F.3d 226, 229 (1997)(citing Hoffman v. United States, 341 U.S. 479, 486-487 (1951). Marini cannot meet this burden because there is no possibility that revealing John Doe's identity will open himself to further prosecution.

### A. There Is No Reasonable Risk Of Further Criminal Prosecution Because Marini Has Already Been Convicted Of The Most Serious Crimes Related To The Beating Of David Cox.

Marini claims that he will face further criminal prosecution if he reveals John Doe's identity. This is highly unlikely, if not impossible, because Marini has already been convicted of violating David Cox's civil rights, assault and battery and assault and battery with a deadly weapon. There are no additional claims the Commonwealth can bring against Marini because the Commonwealth prosecuted Marini to the fullest extent of the law, and there was no information lacking as it pertained to the prosecution of Marini for lesser included offenses.

For instance, Marini suggests that he could face conspiracy charges. David Cox, however, unequivocally testified that it was Marini and two other men who brutally beat him.

(See Exhibit A). Moreover, the police report referenced three individuals involved in the beating of David Cox. (See Exhibit B). Thus, the Commonwealth did not need John Doe's testimony or identity to charge and convict Marini of conspiracy. Indeed, John Doe's identity was not necessary to bring a charge of conspiracy: "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown," Rogers, 340 U.S. 367, 375 (1951). The predicate facts for the offense were already known at the time of trial.

The present case is analogous to Rogers v. U.S., 340 U.S. 367, 371 (1951) where the petitioner first attempted to protect the identity of a friend and, as an afterthought, claimed the privilege against self-incrimination. In that case, the petitioner was already incriminated for a crime, and suggested that if she revealed her friend's name, she would be subject to additional charges, such as conspiracy. Id., at 370. As the court found in Rogers, the questions relating to the activities of the crime are incriminating both as to violation of (or conspiracy to violate) the law. Id., at 372-373. Here, Marini claims that the mere disclosure of John Doe's identity will incriminate him. However, Marini was tried and convicted and revealing John Doe's identity will not further incriminate him.

Additionally, the charge of conspiracy, is a lesser included offense of the crimes of which he was convicted. The case law is clear: "It is well settled that, on its face, conspiracy is a separate and distinct crime from the substantive offense. Only if the substantive offense and the conspiracy are in actuality the same offense do trails for both constitute double jeopardy. To determine whether two offenses constitute the same offense, we examine whether each crime requires proof of an additional fact that the other does not. Stated another way, a 'prosecution for

4

a greater offense precludes subsequent prosecutions for all its lesser included crimes.' A lesser included offense is one which is necessarily accomplished on commission of the greater crime." Commonwealth v. D'Amour, 428 Mass. 725, 704 N.E.2d 1166 (1999). Because of the Double Jeopardy Doctrine, Marini is at no risk of further prosecution. Thus, there is no reasonable likelihood that furnishing John Doe's identity will subject Marini to additional prosecution.

B.     **Revealing John Doe's Identity Will Not Furnish Any Additional Links That Were Not Evident At The Time Of The Original Prosecution.**

Marini's entire argument relies on the Hoffman v. U.S., 341 U.S. 479 (1951) decision,[1] which is distinguishable from the facts of this case. Hoffman involved the grand jury testimony of the petitioner, who refused to answer questions pertaining to the state's *pending* investigation of fraud. The petitioner was not convicted of the crimes related to the state's inquiry, and he actually was a *subject* of the investigation. Hence, he was at risk of incriminating himself. This is not the case for Marini. He has already been convicted of the crimes related to this civil suit, and he suffers no real threat of further prosecution by the Commonwealth. Indeed, the court in Hoffman noted that the 5th Amendment protection "must be confined to instances where the witness has *reasonable* cause to apprehend danger from a direct answer." Hoffman v. U.S., 341 U.S. 479, 483 (1951) (emphasis added). Marini risks no reasonable danger from a direct answer revealing the identity of his friend.

Moreover, there is no additional information that the mere identity of John Doe could furnish to subject Marini to further criminal prosecution. In Hoffman, the court provided the petitioner protection because his testimony "would furnish a link in the chain of evidence needed to prosecute" him for a crime. Hoffman, 341 U.S. 479, 486 (1951). Marini's testimony will not

---

[1] Marini references U.S. v. Greenberg, 187 F.2d 35 (1951) and U.S. v. Singleton, 193 F.2d 464 (1952) in his brief. Those cases were summarily decided and contain no information on the judges' reasoning. However, the cases relied on Hoffman.

5

furnish any additional links because all the information necessary for a charge of conspiracy was known to the Commonwealth at the time of Marini's criminal trial and he was prosecuted under all possible charges related to David Cox's beating. Accordingly, the identity of the third attacker adds nothing to the Commonwealth's ability to bring further charges against Marini.

## CONCLUSION

For the reasons stated herein, the Plaintiff respectfully requests that his motion to compel be granted.

Respectfully submitted,

DAVID COX

By his attorneys,

HOLLAND & KNIGHT LLP


/s/ Geraldine Aine
Deborah S. Griffin (BBO No. 211460)
Damon P. Hart (BBO No. 644586)
Geraldine Aine (BBO No. 665578)
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Barbara J. Dougan (BBO No. 558392)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER THE LAW
294 Washington Street, Suite 443
Boston, MA 02108
(617) 482-1145

Dated: March 9, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the 9th of March, 2007.

/s/ Geraldine Aine

# 4393672_v1

| | | |
|---|---|---|
| 1 | | was just, you know, just a couple of blocks away |
| 2 | | and I felt confident in myself that I could just |
| 3 | | go to the store and get my contact solution like |
| 4 | | any normal person. |
| 5 | Q | Did you do that?  Did you leave for the store? |
| 6 | A | I did leave for the store. |
| 7 | Q | And could you tell the jury what happened as you |
| 8 | | were walking to the store? |
| 9 | A | Yes.  I got onto, I believe it's called |
| 10 | | Commonwealth Avenue, I don't have a map, but I |
| 11 | | made a left onto Commonwealth Avenue, and a |
| 12 | | couple of blocks down, or a few blocks down, I |
| 13 | | was walking straight and then I saw three |
| 14 | | gentlemen walking towards me.  You know, just |
| 15 | | observed them, no judgment or anything. |
| 16 | | THE COURT:  No what, please? |
| 17 | | THE WITNESS:  No judgment. |
| 18 | | THE COURT:  No judgment.  Just |
| 19 | | speak a little louder, if you would, please. |
| 20 | A | It was just three people walking by me.  As they |
| 21 | | passed me one of the three men shouted something |
| 22 | | at me, and what he said was, excuse my language, |
| 23 | | but "You faggot motherfucker, I'm going to kick |
| 24 | | your ass." |

1   Q   Did you say anything in response to hearing that
2       statement?
3   A   I did. I turned around and I asked him plainly,
4       "What?" And there were three gentlemen, one was
5       wearing a white shirt, another was wearing a
6       yellow shirt, another one was wearing a gray
7       shirt.
8   Q   Which one made that statement, Mr. Cox?
9   A   The man in the white shirt.
10  Q   How tall was that man, approximately?
11  A   He was a little taller than I was. I would say
12      about five ten to six feet.
13  Q   Five ten to six feet, is that what you said?
14  A   Yes.
15  Q   And roughly how tall was the man in the yellow
16      tee shirt?
17  A   About my height, I think, five eight or so. He
18      was a little stockier than I was.
19  Q   Do you remember the size of the third man in the
20      gray tee shirt?
21  A   Not as clearly, but I think he was lean and
22      probably about five ten or so.
23  Q   After you said, "What?" what happened?
24  A   The man in the yellow shirt responded and he

1   A   I told him that he should get his friend out of
2       there. Well, he told me his friend was drunk
3       and it wasn't worth it, and I told him that he
4       should get his friend out of there. And he told
5       me that he's a grown man and that he can do what
6       he wants. And I told him, if he's a friend then
7       he should get his friend out of there.
8   Q   What happened then?
9   A   The man in gray who was behind the man without a
10      shirt was kind of pacing back and forth,
11      shouting stuff, shouting out, "Slant-eyed
12      motherfucker, kill him."
13  Q   You need to keep your voice, if you could,
14      either use the microphone or just raise your
15      voice just a bit, please.
16  A   I don't really know what the man in gray was
17      really doing because the man in white was -- or
18      the man without a shirt was right in front of my
19      face and I mean that's all I could focus on
20      really.
21  Q   Do you see that man in the courtroom this
22      afternoon, the man who you've described as
23      initially in a white tee shirt and then you
24      later described as having no shirt on at all?

```
1    A    Yes, I do.
2    Q    For the record, would you state where that
3         person is seated and what they're wearing this
4         afternoon?
5    A    That gentleman is right in front of me right
6         there wearing a white shirt with a tie, dark
7         tie.
8              MS. MARSHARD:  May the record
9         reflect that the witness has identified the
10        defendant, ▮▮▮▮▮▮▮?
11             MR. HOWARD:  No objection, Your
12        Honor.
13             THE COURT:  The record shall so
14        reflect.
15   Q    So you indicated that you were standing less
16        than a foot away from the man without a shirt;
17        is that correct?
18   A    Yes, I was.
19   Q    And what happened then?
20   A    He kept threatening me, or daring me to hit him,
21        and I kept telling him that I wasn't looking for
22        a fight.  And out of nowhere the man in gray
23        jumped over the man without a shirt, I guess his
24        right shoulder, and punched me in my left eye
```

AUG-17-2002 09:25   BOSTON POLICE DEP                    617 343 4597   P.02

CARINO 4780

## Boston Police INCIDENT REPORT

☑ ORIGINAL  ☐ SUPPLEMENTARY

| 01. KEY SITUATIONS | | 02. COMPLAINT NO. 020459091 | 03. REPORT DIST. D14 | CLEARANCE DIST. N/V |
|---|---|---|---|---|
| 04. TYPE OF INCIDENT ABDW | 05. CRIME CODE | 06. STATUS | 07. DATE/TIME OF OCCUR. A  08/17/2002 02:35 AM | |
| 08. LOCATION OF INCIDENT 1075 COMMONWEALTH AV, | APT. | 09. DISPATCH TIME 02:48 AM | 10. DATE/TIME OF OCCUR. B | |
| 11. VICTIM-COMP. (LAST, FIRST, MI) COX, DAVID | 12. PHONE (323)-273-0620 0677 | 13. SEX MALE | 14. RACE ASIAN | 15. MARITAL STATUS UNMARRIED |
| 16. ADDRESS 1339 MIDLSAND DR. ST. LOUIS, MO 63130-0000 | APT. | OCCUPATION PAINTER Student | 17. AGE 18 24 | 18. D.O.B. 10/13/1983  07-07-78 |
| 19. PERSON REPORTING COX, DAVID | 20. ADDRESS 1339 MIDLSAND DR. ST. LOUIS, MO | APT. | 21. PHONE (323)-273-0620 | |

22. WAS THERE A WITNESS TO THE CRIME  ☑ YES ☐ NO

| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | APT. | TEL |
|---|---|---|---|---|---|---|
| BORDWELL, SEAN | 21 | ON-SCENE | | [redacted], ROXBURY, MA 02119-0000 | 2 | (617) [redacted] RES / (000)-000-0000 BUS |

23. NUMBER OF PERPETRATORS: 2   CAN SUSPECT BE IDENTIFIED AT THIS TIME  ☑ YES ☐ NO

| 24. PERSON TYPE ARRESTED - SUSPECT | 25. NAME (LAST, FIRST, MI) MARINI, RYAN | 26. S.S. NO. [redacted] | 27. BOOKING NO 020043104 | 28. PHOTO NO | 29. ALIAS |
|---|---|---|---|---|---|
| 30. WARRANT NO. | 31. ADDRESS [redacted] ROXBURY, MA 02119-00002 | 32. SEX MALE | 33. RACE WHITE NON-HISPANIC | 34. AGE 18 | 35. HEIGHT 6-00 | 36. D.O.B. [redacted] |
| 37. SPECIAL CHARACTERISTICS BLUE JEAN SHORTS | | 38. WEIGHT 165 | 39. BUILD MEDIUM | 40. HAIR LIGHT | 41. EYES BLUE |

| 24. PERSON TYPE SUSPECT | 25. NAME UNK | 26. S.S. NO | 27. BOOKING NO 000000000 | 28. PHOTO NO | 29. ALIAS |
|---|---|---|---|---|---|
| 30. WARRANT NO. | 31. ADDRESS | 32. SEX MALE | 33. RACE WHITE NON-HISPANIC | 34. AGE 0 | 35. HEIGHT | 36. D.O.B. |
| 37. SPECIAL CHARACTERISTICS GRAY SHIRT | | 38. WEIGHT | 39. BUILD N/A | 40. HAIR | 41. EYES |

42. CAN SUSPECT VEHICLE BE DESCRIBED  ☐ YES ☑ NO

| 43. VEHICLE TYPE | | 44. REG. STATE NO | 45. PLATE TYPE | YEAR (EXP.) | 46. MODEL |
| 47. VEHICLE MAKE-YEAR | 48. VEHICLE NO. | 49. STYLE | 50. COLOR (TOP-BOTTOM) | | |
| 51. OPERATOR'S NAME | 52. LICENSE NO. | 53. OPERATOR'S ADDRESS | | | |
| 54. OWNER'S NAME | 55. OWNER'S ADDRESS | | | | |

56. CAN PROPERTY BE IDENTIFIED  ☐ YES ☑ NO

| STATUS | 57. TYPE OF PROPERTY | 58. SERIAL OR IDENT-GUARD NO. | 59. BRAND NAME-DESCRIPTION | 60. MODEL | 61. VALUE | 62. UCR |
|---|---|---|---|---|---|---|
| | | | | | | |

64. WAS THERE A SIGNIFICANT M.O.  ☑ YES ☐ NO

| 65. TYPE OF WEAPON-TOOL SHOD FOOT | 66. NEIGHBORHOOD COMMERCIAL RESIDENTIAL | 67. TYPE OF BUILDING N/A | 68. PLACE OF ENTRY N/A |
| 69. WEATHER CLEAR | 70. LIGHTING STREET | 71. TRANSPORTATION OF SUSPECT FOOT | 72. VICTIMS ACTIVITY WALKING DOWN THE STREET |
| 73. UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATORS "SLANT EYED FAGGOT"; "CHINK MOTHER FUCKER" | | | RELATIONSHIP TO VICTIM N/A |

74. IS THERE ANY PHYSICAL EVIDENCE  ☑ YES ☐ NO

75. IS THERE ANY OTHER REASON FOR FURTHER INVESTIGATION  ☑ YES ☐ NO

Victim: David Cox.

continued on page 2

| ST. | 2. COMPLAINT NO. 020459091 | BOSTON POLICE DEPARTMENT CONTINUATION SHEET | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|
| TIME OF OCCUR. A /2002 02:35 AM | | 4. TYPE OF INCIDENT ABDW | REMARKS: | | |

NARRATIVE AND ADDITIONAL INFORMATION

ABOUT 2:48AM, OFFICERS LANCHESTER AND WHALEN IN THE K102A, RESPONDED TO A R/C FOR A FIGHT AT 1105 COMM AVE. UPON ARRIVAL, SPOKE TO P.O. BRIAN CAREY OF THE MBTA POLICE WHO STATED THAT AS HE WAS WORKING A DETAIL ON COMM AVE, HE WAS APPROACHED BY AN ASIAN MALE (LATER IDENTIFIED AS DAVID COX, VICTIM) WHO STATED THAT HE HAD BEEN ATTACKED BY TWO MALES. OFFICERS THEN OBSERVED THE VICTIM, SUFFERING FROM MULTIPLE ABRASIONS AND A FAT LIP, LAYING ON THE SIDEWALK. HE STATED THAT HE WAS PUNCHED AND KICKED IN THE HEAD BY TWO MALES AFTER THEY VERBALLY ASSAULTED HIM AS HE WALKED ON THE SIDEWALK IN FRONT OF 1075 COMM AVE. VICTIM ALSO STATED THAT THE S/P'S BOTH USED RACIAL SLURS SUCH AS "SLANK EYED FAGGOT" AND "CHINK MOTHER FUCKER" DURING THE ASSAULT. VICTIM IDENTIFIED RYAN MARINI, WHO WAS ON SCENE, AS ON OF THE ATTACKED WHO KICKED HIM IN THE HEAD. MR. MARINI WAS CALLING THE VICTIM "A CHINK-ASS FAGGOT" IN THE OFFICERS PRESENCE. H&H AMB #1 RESPONDED WITH EMT'S FARROW AND HARER AND TRANSPORTED VICTIM TO BRIGHAM AND WOMEN'S HOSPITAL FOR INJURIES. S/P MARINI WAS PLACED UNDER ARREST FOR A&B D/W SHOD FOOT AND TRANSPORTED TO D-14 FOR BOOKING.

| 72. UNIT ASSIGNED K102A | 78. TOUR 1 | 79. REPORTING OFFICER WAYNE LANCHESTER | SIGNATURE | 80. REPORTING ID 11046 | 81. PARTNERS ID 8271 | ☐ F.I. |
|---|---|---|---|---|---|---|
| 12. DATE OF REPORT 08/17/2002 | 83. SPECIAL UNITS NOTIFIED (REPORTING) COMMUNITY DISORDERS UNIT | | | | | TELETYPE NO. |
| 14. TIME COMPLETED 04:14 AM | 85. SIGNATURE OF PATROL SUPERVISOR ROBERT JOHNSTON | 86. PAT. SUP. ID 6863 | 87. DUTY SUPERVISOR JOHN KERVIN | SIGNATURE | | 88. DUTY SUP. ID 7342 |

TOTAL P.03